## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
## WESTERN DIVISION

**ERNEST E. COLLINS**                                                                 **PLAINTIFF**

**v.**                                                                                 **No. 3:12CV33-B-V**

**GEO GROUP, INC., ET AL.**                                                           **DEFENDANTS**

### REPORT AND RECOMMENDATION

On June 4, 2012, plaintiff Ernest E. Collins, an inmate in the custody of the Marshall County Correctional Facility with inmate number 13044, appeared before the undersigned for a hearing as set forth in *Spears v. McCotter,* 766 F.2d 179 (5ᵗʰ Cir. 1985), to determine whether there exists a justiciable basis for his claim filed under 42 U.S.C. § 1983. A plaintiff's claim will be dismissed if "it lacks an arguable basis in law or fact, such as when a prisoner alleges the violation of a legal interest that does not exist." *Martin v. Scott*, 156 F.3d 578 (5ᵗʰ Cir. 1998)(citations omitted). The Prison Litigation Reform Act applies to this case because the plaintiff was incarcerated when he filed this lawsuit.[1]

### Allegations

On June 23, 2011, at the Marshall County Correctional Facility ("MCCF"), Officers entered housing Unit A-3 to respond to a call regarding an inmate attack on a Corrections Officer. By the time the officers arrived, the incident had largely concluded, and the inmates involved in the fracas had been removed to a holding cell.

When the officers were leaving Unit A-3, they passed Unit A-4, where an inmate started yelling and causing a ruckus. The officers responding to the incident were Sgt. James Tunstan

---

[1]28 U.S.C. § 1915(g).

(who brought a non-lethal riot gun), Lt. Martin, Lt. Rodgers (who recorded the events with a video camera), and Lt. Ryan (who held a can of pepper spray).

Tunstan and Martin entered Unit A-4 first and told all 65 of the inmates to "catch their racks," meaning to face away from the doors to their cells and grab their bunks. Tunstan then ordered all inmates to lie face down on the floor with their hands behind their heads. Tunstan then walked around Unit A-4 waving his riot gun, yelling, "Go ahead. One of y'all get up, and I'll shoot." All the inmates complied, even the one who had shouted at the officers. However, the inmate who had shouted started standing up again. At this point, after quelling a disturbance where inmates had attacked a guard in the adjacent unit, the three officers stood in a room filled with 65 inmates – with one of the inmates causing further trouble. The guards were outnumbered more than 20 to 1. Tunstan told Ryan, "Some of them are acting like they're gonna do something. I may have to shoot." She responded, "Go ahead and shoot one time." Tunstan fired a single shot toward the non-compliant inmate. The pellets struck Collins in the right eye, right leg, and right ankle. Other inmates were also hit by the shot: Jason Montgomery (side of the face), Kurt Middleton (left eye), Kelvin Sanders (right side and leg), and Tommy Johnson (leg). All of the inmates who were hit were lying facedown on the ground with their hands behind their heads.

The officers, still outnumbered but more in control of the situation, did not immediately take the inmates to the infirmary for treatment. The injured inmates were, however, taken to medical two hours later. Collins saw Nurse Odom, who took vital signs and told him that he had to wait until the doctor returned to be examined. Collins returned to his cell. The doctor examined Collins about twelve hours later and told him that he should see a free world eye doctor. Collins was returned to his cell without receiving treatment.

Collins sought treatment for his eye, and he was treated with antibiotic ointment and artificial tears. Collins was treated by a prison doctor five times, but his eye trouble persisted. Medical personnel told him that he would be seen by an outside doctor, and he did on August 12, 2011. The free world doctor at Holly Springs Optical told Collins that his eye had healed nicely. The doctor could not tell if there would be any permanent damage. Collins did, however, have eyelashes that were growing in towards his eye, causing scratching and irritation, and he was treated for this condition. Collins also received new eyeglasses during this visit, and the doctor told him he should come back every four weeks to have the errant lashes removed. The prison officials did not, however, send Collins back, and the irritation and swelling has returned.

## Excessive Force

Collins claims that prison guards used excessive force against him in violation of the Eighth Amendment. In order to balance the constitutional rights of convicted prisoners with the needs of prison officials to effectively use force to maintain prison order, the Supreme Court has held that to establish liability on the part of defendants the plaintiff must prove the force was applied "maliciously and sadistically to cause harm," and not "in a good-faith effort to maintain or restore discipline . . . ." *Hudson v. McMillian*, 503 U.S. 1, 6-7, 112 S. Ct. 995, 117 L. Ed. 2d 156 (1992) (citing *Whitley v. Albers*, 475 U.S. 312, 320-21, 106 S. Ct. 1078, 89 L. Ed. 2d 251 (1986)); *see Rankin v. Klevenhagen*, 5 F.3d 103 (5th Cir. 1993).

The defendants in this case had just quelled a prison disturbance in which their fellow guards had been attacked. The three of them then entered a room to quell another disturbance in which one inmate was trying to rile up the other 64 inmates there. The guards were in a tense situation and badly outnumbered. Though the loud inmate initially complied with the defendants' order to lie on the floor with his hands behind his head, he then stood up in defiance

of that order.  By Collins' description of events, defendant Tunstan was hesitant to fire the riot

gun, but he noted, "Some of them are acting like they're going to do something."  He quickly

discussed it with defendant Ryan, who decided that they needed to gain control of the inmates

immediately, saying, "Go ahead and fire one time."  Tunstan fired the non-lethal weapon once in

the direction of the unruly inmate, and the guards had control of the situation again.  Collins and

others sustained minor injuries, and they were sent to medical about two hours later.  The

defendants discussed their actions ahead of time, and the action was measured and designed to

gain control of a situation likely to spiral out of control – and result in injury to the guards,

prisoners, or both.  The force to regain control of the inmates, was exercised "in a good-faith

effort to maintain or restore discipline," not "maliciously and sadistically to cause harm."

*Hudson v. McMillian*, 503 U.S. 1, 6-7, 112 S. Ct. 995, 117 L. Ed. 2d 156 (1992) (citing *Whitley*

*v. Albers*, 475 U.S. 312, 320-21, 106 S. Ct. 1078, 89 L. Ed. 2d 251 (1986)); *see Rankin v.*

*Klevenhagen*, 5 F.3d 103 (5th Cir. 1993).  Collins believes that the defendants should have used a

lesser amount of force – or no force.  However, given the situation he describes in his complaint,

the court believes the use of the riot gun in this case to be an appropriate and rational use of force

given the grave risk involved.  This claim is without merit and should be dismissed.

### Denial of Medical Treatment

In order to prevail on an Eighth Amendment claim for denial of medical care, a plaintiff

must allege facts which demonstrate "deliberate indifference to the serious medical needs of

prisoners [which] constitutes 'unnecessary and wanton infliction of pain' proscribed by the

Eighth Amendment . . . whether the indifference is manifested by prison doctors or prison guards

in intentionally denying or delaying access to medical care . . . ."  *Estelle v. Gamble*, 429 U.S.

97, 104-105, 50 L. Ed. 2d 251, 260 (1976); *Mayweather v. Foti*, 958 F.2d 91, 91 (5th Cir. 1992).

The test for establishing deliberate indifference is one of "subjective recklessness as used in the criminal law." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Under this standard, a state actor may not be held liable under 42 U.S.C. § 1983 unless plaintiff alleges facts which, if true, would establish that the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 838. Only in exceptional circumstances may knowledge of substantial risk of serious harm be inferred by a court from the obviousness of the substantial risk. *Id.* Negligent conduct by prison officials does not rise to the level of a constitutional violation. *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662 (1986), *Davidson v. Cannon*, 474 U.S. 344, 106 S.Ct. 668 (1986). In cases such as the one at bar, arising from delayed medical attention rather than a clear denial of medical attention, a plaintiff must demonstrate that he suffered substantial harm resulting from the delay in order to state a claim for a civil rights violation. *Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993); *Campbell v. McMillin*, 83 F. Supp. 2d 761 (S.D. Miss. 2000). A prisoner's mere disagreement with medical treatment provided by prison officials does not state a claim against the prison for violation of the Eighth Amendment by deliberate indifference to his serious medical needs. *Gibbs v. Grimmette*, 254 F.3d 545 (5th Cir.2001), *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997).

Collins only challenges the adequacy of the medical treatment for the eye problems he experienced after the incident. He was examined two hours after he sustained his injuries and treated with antibiotics and artificial tears. Indeed, he was examined by a prison doctor five times before he was referred to a free world doctor. That doctor told him that his eye had "healed up fine." The free world doctor found that Collins' eye irritation arose from eyelashes

growing into his eye, rather than curving outward. The doctor removed the offending lashes and told Collins he would need to have the lashes removed every four weeks. Prison officials did not, however, send him back, and the irritation to his eyes has returned. Collins was treated for his eye problems; he simply disagrees with the treatment provided. Such disagreement does not constitute a valid § 1983 claim. In addition, the eye irritation about which Collins now complains does not rise to the level of substantial harm and, as such, this allegation does not qualify as a viable claim for relief under 42 U.S.C. § 1983. It should therefore be dismissed for failure to state a claim upon which relief could be granted.

In sum, none of the plaintiff's allegations state a constitutional claim, and this case should be dismissed with prejudice for that reason.

### Handling of Objections, Acknowledgment of Receipt

The appropriate procedures for filing objections to these findings and recommendations are found in 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b). Objections must be in writing and must be filed within fourteen (14) days of this date, and "a party's failure to file written objections to the findings, conclusions, and recommendation in a magistrate judge's report and recommendation within [14] days after being served with a copy shall bar that party, except on grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court . . . ." *Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (*en banc*)(citations omitted); *see also United States v. Carrillo-Morales*, 27 F.3d 1054, 1061-62 (5th Cir. 1994), *cert. denied*, 513 U.S. 1178, 115 S.Ct. 1163, 130 L. Ed. 1119 (1995).

The plaintiff must acknowledge receipt of this report and recommendation by signing the enclosed acknowledgment form and returning it to the clerk of the court within fourteen (14)

days of this date.  *Failure to comply with the requirements of this paragraph may lead to dismissal of this lawsuit under Fed. R. Civ. P. 41(b) for failure to prosecute the claim and for failure to comply with an order of the court.*

Respectfully submitted this 22nd day of June, 2012.


/s/   Jane M. Virden
UNITED STATES MAGISTRATE JUDGE